IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CARL DEJESUS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 13-5734 |
| | : | |
| ARAMARK FOOD SERVICE, INC., et al. | : | |
| | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.** **January 14, 2014**

Plaintiff Carl DeJesus brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights during his time as a prisoner at Chester County Prison by Aramark Correctional Services, LLC (Aramark) and Mr. Kramer, an Aramark employee, and by Chest County Prison Supervisor Robert Francis and Correctional Officer David Weed (together Chester County Defendants).[1] Defendants have filed two separate motions to dismiss for failure to state a claim, and for the reasons set forth below, the motions will be granted.

**BACKGROUND**

DeJesus was a prisoner at Chester County Prison from May 1, 2013, to October 30, 2013. He alleges the food he received while incarcerated was preserved with citric acid, which caused

[1] In his Complaint, DeJesus misidentifies Aramark Correctional Services, LLC as "Aramark Food Service, Inc." In addition, DeJesus lists three individual defendants—Aramark Assistant Food Service Director Kramer, Prison Supervisor Robert Francis, and Correctional Officer David Weed. Given the obligation of this Court to construe a pro se plaintiff's complaint liberally, the Court interprets DeJesus's Complaint as asserting claims against the three individuals in both their individual and official capacities, as well as against Aramark as a municipality. *See Connolly v. Oquendo*, No. 12-CV-0315, 2013 WL 4051320 (E.D. Pa. Aug. 9, 2013) (explaining that when a private corporation acts under color of state law, its actions are analyzed under a *Monell* framework for municipal liability). The Court will construe DeJesus's amendment to his Complaint, filed a few weeks after his original Complaint, as asserting claims against Aramark and Chester County as municipalities.

sores in his mouth, throat, and digestive system. DeJesus asserts he was denied treatment for his allergic reactions, and he spent over eighteen days not eating. He submitted various request and medical slips seeking a diagnosis and a change in meals, and on July 8, 2013, Defendant Francis told him that he would "put a stop to the kitchen staff sending food with the preservative, citric acid." Compl. 3. Additionally, DeJesus asserts Defendant Kramer, the Aramark Assistant Food Service Director at Chester County Prison, told him that he would see to it that DeJesus received a "no citric acid diet." *Id.* DeJesus also states an employee of Prime Care Medical, the company which provides medical services to the prison, told him that the sores were caused by AIDS, and he took two blood tests for the disease. The results of those tests are not set forth in the pleadings. In response to his medical requests and complaints, DeJesus received salt rinses, blood and urine tests, and Zantac, an over-the-counter medication used to treat and prevent ulcers in the stomach and intestines.

DeJesus supplemented his original Complaint on October 23, 2013, asserting that various items at the Aramark Food Service Canteen are overpriced. He also states there is black mold growing in the showers and the air quality at the prison places inmates at risk of cancer.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a Rule 12(b)(6) motion, a court first must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept

all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id.* at 210-11. The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). Where, as here, the plaintiff is proceeding pro se, "the court has an obligation to construe the complaint liberally." *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009).

To successfully state a § 1983 claim, a plaintiff must allege: (1) the conduct complained of was committed by a person acting under color of state law; and, (2) the conduct complained of deprived the plaintiff of rights, privileges, or immunities secured by the laws or the Constitution of the United States. *Rehberg v. Paulk*, 132 S. Ct. 1497, 1501 (2012). In this case, DeJesus asserts the Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) ("Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, . . . proscribed by the Eighth Amendment [and provides for] a cause of action under § 1983."). The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). To state a claim for inadequate medical treatment, a plaintiff must demonstrate: "(1) that the defendants were deliberately indifferent to [the plaintiff's] medical needs and (2) that those needs were [objectively] serious." *Id.* Deliberate indifference "requires obduracy and wantonness, which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Id.* (internal citation and quotation marks omitted). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere negligence in "treating a medical condition does not state a valid claim of medical

mistreatment under the Eighth Amendment." *Gallo v. Washington Cnty.*, 363 F. App'x 171, 173 (3d Cir. 2010) (citation omitted).

Municipalities, or private corporations providing municipal functions, can be held liable under § 1983. To establish liability under this theory, the plaintiff must show: (1) a municipal policy or custom that caused the constitutional violation, and (2) "through its deliberate conduct, the municipality [or private company] was the 'moving force' behind the injury alleged." *Bd. of County Comm'rs of Bryan Cnty v. Brown,* 520 U.S. 397, 403-04 (1997); *see also Connolly v. Oquendo*, No. 12-CV-0315, 2013 WL 4051320, at *3 (E.D. Pa. Aug. 9, 2013) ("To hold a municipality or private corporation performing a municipal function liable for the actions of its employees in providing inadequate medical care, a plaintiff must show a relevant policy or custom attributable to the municipality and a direct causal link between the municipal action and the deprivation of federal rights." (citation and internal quotation marks omitted)).

A government policy or custom can be officers' adoption and promulgation of a policy, statement, ordinance, regulation, or decision, or can be practices by officials that are so permanent and well settled as to constitute a "'custom or usage' with the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978) (citation omitted). A municipality may also be held liable under § 1983 for its employee's violation of a citizen's constitutional rights if the employee's conduct implements an official policy or practice, although not on a respondeat superior theory of liability. *Id.* at 690-92.

When dismissing a civil rights complaint for failure to state a claim, a district court must grant the plaintiff leave to amend—even when the plaintiff does not request leave—unless amendment would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007). Because in this case it is clear amendment

would be futile as to DeJesus's claims against all the Defendants, his claims will be dismissed with prejudice and may not be reasserted.

**A. Claims Against Aramark Defendants**

1. Claims Against Aramark Correctional Services, LLC

DeJesus asserts Aramark violated his Eighth Amendment rights by continuing to serve him meals containing citric acid, even after he complained about his alleged allergy. This claim will be dismissed with prejudice for failure to allege any basis to infer Aramark could be liable for a deprivation of DeJesus's constitutional rights.

A private corporation such as Aramark may be held liable for Eighth Amendment violations under § 1983 only if, while acting under color of state law, the corporation deliberately chose not to take reasonable steps to address a substantial risk of serious harm to an inmate. *Gallo*, 363 F. App'x at 174. "Relevant to this inquiry is the extent to which the risk of harm was obvious and whether the failure to implement a policy or policies to address that harm was likely to result in the violation of [plaintiff's] constitutional right." *Id.*

Even assuming Aramark, as the prison's food service provider, was acting under color of state law,[2] and DeJesus's injuries are "sufficiently serious" to qualify under the second prong of

---

[2] To successfully state a claim under § 1983, a plaintiff must show the alleged deprivation of a constitutional right was committed by a person acting under color of state law. *See* 28 U.S.C. § 1983. Under the "public function" test, a private party acts under color of state law when it "perform[s] a function that has been traditionally the exclusive prerogative of the State." *Blum v. Yartesky*, 457 U.S. 991, 1011 (1982) (internal quotation marks omitted). In cases similar to the one at issue here, several courts in this district have considered Aramark to have acted under color of state law for purposes of § 1983 by performing the traditional government function of providing food service at a prison. *See, e.g.*, *McCullum v. City of Philadelphia*, No. 98-5858, 1999 WL 493696, at *3 (E.D. Pa. July 13, 1999); *Talley v. Amarker*, No. 95-7284, 1996 WL 528867 (E.D. Pa. Mar. 7, 1996). This Court will assume, without deciding, that Aramark was acting under color of state law when it served the meals at Chester County Prison and focus instead on the question of whether Aramark's actions deprived DeJesus of a right, privilege, or immunity secured by the Constitution.

the Eighth Amendment test, DeJesus has failed to adequately plead that his injuries were caused by any deliberate action taken by Aramark. DeJesus does not allege that he was diagnosed with a citric acid allergy or, if he was diagnosed with a food allergy, that the prison medical provider, Prime Care Medical, made Aramark aware of it. In fact, DeJesus admits that one Prime Care worker advised him that his sores were not caused by the prison food but were instead caused by AIDS.[3] Although DeJesus asserts he submitted medical and request slips to change his diet, he does not allege these slips were directed to Aramark officials or that Aramark had the authority to determine whether he should receive a specialized meal or alter his diet. Simply put, DeJesus fails to state facts demonstrating the existence of a policy or custom on the part of Aramark that was the moving force behind the alleged constitutional violation, and his claims will be dismissed with prejudice.

In addition, Aramark is not liable for the acts of Kramer, who DeJesus alleges told him he would no longer receive meals with citric acid. The Complaint does not indicate how or if Kramer acted pursuant to some formal policy or standard operating procedure, or whether he had the authority to speak for Aramark. DeJesus also does not claim that Aramark ratified Kramer's conduct after it occurred. In effect, DeJesus merely asserts Aramark should be liable because Kramer is its employee, which is an impermissible respondeat superior theory of liability under § 1983. Because this type of respondeat superior claim can never succeed under § 1983, amendment would be futile and this claim will be dismissed with prejudice.

Lastly, DeJesus's amendment charging Aramark with overpricing the food items at the prison canteen fails to state a claim upon which relief can be granted. It is not clear what, if any, injury DeJesus has suffered or which of his constitutional or statutory rights have been violated.

---

[3] Again, DeJesus has not informed the Court the results of his blood tests for AIDS, so the Court is not aware of whether DeJesus has this disease.

Such a vague allegation does not meet the requisite pleading standards and will be dismissed with prejudice.

2. Claims against Kramer

DeJesus's claims against Kramer in his personal capacity will be dismissed with prejudice because DeJesus fails to establish that Kramer acted with the sort of deliberate indifference required to establish a constitutional violation under the Eighth Amendment. DeJesus asserts only that Kramer, an Aramark employee, told DeJesus he would no longer receive meals with citric acid. Assuming, without deciding, DeJesus was suffering from an injury sufficient under the Eighth Amendment test, this statement does not suggest Kramer believed, or even had a reason to believe, DeJesus had a serious medical need and was deliberately indifferent to that need. DeJesus does not allege he told Kramer about the seriousness of his injury or its link to citrus acid, nor can it be inferred Kramer had some reason to know citric acid was causing DeJesus's injury. Further, DeJesus does not contend Kramer had the authority to determine the meals DeJesus received. Based on the allegations in the Complaint, Kramer could not have acted with "deliberate indifference," i.e., knew of and disregarded an excessive risk to DeJesus's health and safety, and DeJesus has therefore failed to state a plausible claim under the Eighth Amendment.

DeJesus's claims against Kramer in his official capacity pursuant to § 1983 will be dismissed with prejudice because these claims are viewed as claims against Aramark. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity . . . . It is *not* a suit against the official personally, for the real party in interest is the entity." (internal citations omitted)); *Monell,* 436 U.S. at 691 n.55 ("[O]fficial-capacity suits generally represent only another way of pleading an

action against an entity of which an officer is an agent.”). As explained above, these claims against Aramark pursuant to a municipal liability theory fail and will therefore be dismissed.

**B. Claims against Chester County Defendants**

1. Claims against Prison Supervisor Francis and Correctional Officer Weed

DeJesus’s claims against Francis and Weed in their individual capacities will be dismissed with prejudice because, similar to his claims against Kramer, DeJesus has failed to establish these Defendants acted with deliberate indifference. Nonmedical prison officials are not deliberately indifferent simply because they failed to respond to the medical complaints of a prisoner who was being treated by prison doctors. *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993). The Third Circuit has explained “[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.” *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). DeJesus admits he was receiving medical treatment during the course of his injury, and he never asserts he was diagnosed with a citric acid allergy or that Francis and Weed were aware of such an injury. He does not specify to whom the request and medical slips were directed, but even if Francis and Weed were aware of such requests, DeJesus was under the care of medical prison officials, and their failure to respond does not make Francis and Weed deliberately indifferent. In addition, Francis and Weed, not being medical personnel, had no way to know whether the citric acid was causing DeJesus’s sores or that the sores were a threat to his health and safety. Because DeJesus cannot allege the Defendants had knowledge of or disregarded an excessive risk to his health or safety, his claims against Francis and Weed will be dismissed with prejudice.

In addition, DeJesus’s claims against Francis and Weed in their official capacities pursuant to § 1983 will be dismissed with prejudice because, as explained above, these claims

are viewed as claims against the municipality, in this case Chester County. DeJesus fails to point to an official policy or custom which was the moving force behind his alleged injury. In fact, the facts adduced by DeJesus demonstrate that the prison staff was engaged in efforts to alleviate his pain and diagnose and treat his condition by giving him salt rinses, blood and urine tests, and medication. Because he does not describe any official policy or custom regarding the provision of meals or indifference to his condition, his claims against Chester County for sores caused by the prison food will be dismissed with prejudice.

2. **Claims against Chester County for Mold and Air Quality**

Lastly, DeJesus's conclusory allegations against Chester County in the amendment to his original Complaint regarding the showers and air quality will be dismissed with prejudice. DeJesus fails to assert any particularized injury or grounds for relief in his claims that there is black mold in the shower area and the air quality places him at risk of cancer. The minimal facts he alleges do not sufficiently demonstrate DeJesus has a plausible claim for relief, and the Court cannot reasonably draw any inference that Chester County is liable for the alleged misconduct.

An appropriate order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.